We'll move on to the next case of the day, which is Christopher Gish v. Randall Hepp, Appeal 19-1476. And we'll hear first from Ms. Feith. Thank you, and may it please the Court. At the evidentiary hearing in this case, there were two factual questions that were really underlying the legal issue. First, did Christopher Gish's lawyer fail to investigate a viable defense? And second, if he'd investigated that defense and consulted with his client about it, would Gish have gone to trial? The district court didn't exactly answer those questions. It assumed the defense was viable, it acknowledged there was some evidence supporting it, and it assumed that counsel performed efficiently by not looking into it. But it thought the defense wasn't very good. Really, it thought that Gish's expert at the hearing in the habeas court wasn't persuasive in light of the totality of the evidence, or at least the totality of the evidence that was presented, again, in the habeas court. So then, on the second factual question, instead of focusing on Gish's testimony, trial counsel's testimony, contemporaneous evidence about their communications before the guilty plea that would all go into what was he thinking when he made the decision to plead guilty, the district judge assumed that because he didn't find the expert persuasive on the affirmative defense, trial counsel wouldn't have found him persuasive either. And from that, again, ignoring the evidence about Gish's actual decisional process, the court thought that regardless, he would have pled guilty. Ms. Fite, how would you, in a sentence or a few sentences, how would you articulate the controlling prejudice standard here? So go right to promptu, and how would you articulate just what's the legal test that we need to apply? So if Gish's attorney had performed sufficiently, if he had investigated this matter, is there a reasonable probability that Gish would have gone to trial rather than pleading guilty? And that comes out of Hill v. Lockhart and other cases beyond that, most recently the Lee case that is cited quite a bit in briefing. Okay, and the reason I wanted to ask you that is because, and I think you did a really fine job in your brief, you know, articulating it that way, but there's language after that in Hill, is there not? Where the court says in the context of a potential affirmative defense that the inquiry takes on a more refined form, and that is assessing whether the affirmative defense likely would have succeeded at trial. Is that part of the inquiry, or do you believe that that's been somehow modified or tweaked by Lee? I don't think it's necessarily been modified. I think it's been clarified. You know, that wasn't what was at issue in Hill v. Lockhart, but it was saying that in certain circumstances, the most important piece is going to be what would happen at a trial. So where you have an affirmative defense, the question is what would happen at a trial. But even there, it talks about the need to weigh the risks and benefits of trial versus the risks and benefits of a plea. So I see those lines in Lockhart as being primarily sort of an example. And then the case that they use as an example is this court's Evans v. Myers case, where there really was no defense at all. And so the court said, you know, the defendant's claim that he would not have pled guilty if he had known about this defense doesn't make any sense. It wasn't even an affirmative defense under state law there. There was no evidence of it. And when you weigh the risk of trial, which was a 120-year sentence, against the benefits of the plea, which I think was roughly a nine-year sentence, there was no question. So that's the case that Hill v. Lockhart is looking at. And so I don't think you can read that language to mean more likely than not to win at a trial. And I think that in Lee, it really refined that standard in explaining—Lee was really about where someone has no defense. And the Supreme Court repeatedly says where there is no viable defense, there are situations in which a defendant would nevertheless go to trial. But here, we aren't in the no viable defense world. The whole claim is that defense counsel missed a viable defense. It's just a matter of the district court thinking it would not have been likely to win at trial, which it did by essentially treating the evidentiary hearing in the habeas court like it were a trial, rather than evidence about if defense counsel had adequately investigated this issue, what would he have learned about Xanax intoxication? What would he have learned about the paradoxical reaction that one can have to Xanax? And most importantly, were Gish's—was Gish's behavior on the night of the homicide consistent with information about all of that? And if he had had that information, it's not, again, playing out at a trial. What would the attorney's view of the case have been? And we know from the hearing, defense counsel is quite interested in it. It would have been a defense that he would have shared with Gish. And then all the contemporaneous evidence of communications before the decision to plead guilty, which happened on the day that was set for trial, was that Gish was desperately looking for a defense to go to trial with. Are you saying, then, that you don't think the inquiry of the likelihood of success of the affirmative defense plays any role in that analysis? No, that's not what I'm saying, Your Honor. I think it certainly plays a role, the likelihood of success. But it doesn't inform the lawyer's decision on what to tell Gish to do? Absolutely. But it's not a more likely than not test, is what I'm saying. Certainly, if it's a defense, like in the Evans case, that couldn't have gone anywhere because there was nothing to it, then we're not going to say that somebody would—it's not going to be deficient performance. It's not going to be prejudice. But defendants routinely go to trial with defenses that are not more likely than not to win. And in this case, where, again, we have contemporaneous evidence that he was looking, is there some defense I can raise? And in particular, I'm really interested in a defense that would raise my medication. And then when you look at—again, the weighing is really important, and the state tries to ignore this here—the plea that he entered, even under that plea, his lawyer was arguing for, I think it was a 30-year sentence, and defense counsel said, sentencing, this is essentially going to be a life sentence for my client, who at the time was in his 40s. So we're not weighing a 120-year sentence against a 9-year sentence. And we're not like Evans or Lee, where there is no viable defense. Here, there's a viable defense. He could have succeeded at trial. He may not. How do we make the—and I—how do we determine if the defense is viable for purposes of this analysis? Because it seemed that's what the district court was doing. Sure, and he— Sure, there is a defense, and it looks like he could get over the hump of some evidence to present this defense to the jury. But is that enough, or does there have to be something more than just some evidence, some likelihood that if he could ultimately win? Under the facts of this case, that is absolutely enough. He was looking to— Which one? Sorry. Just having some evidence, having a real defense, being able to present evidence to a jury to show that he was not guilty, that's what he was looking for. That's what he wanted before he made the sort of, you know, last-minute decision to plead guilty. And so in this case, absolutely. In a different case, it's not— What about if that defense, as the court found, wasn't likely to be successful? Does that matter to the analysis here? It matters to the analysis to the extent that it matters to the decision process. And that's why we have to focus on the defendant's decision process. And Lee just—I mean, the cases before Lee certainly get into that, but Lee made it crystal clear that this is about the decision process that was occurring. So in that case, where there was really no defense, he could play for a fumble because he didn't want to be deported. Here, we're not talking about playing for a fumble, but we're not talking about a defense that's necessarily everybody thinks is going to— So I see how you read Lee that way. And what I'm wondering about is, does he'll allow for that kind of inquiry? And I'll tell you what's been on my mind about this, and it's implicit in one of the points that you made. Did Mr. Gish ever argue this in terms of, I'm picking between really bad options here. I plead, and I plead myself into something that's tantamount to a life sentence. He was 38 at the time of the murder, and he doesn't know what sentence he's going to get at the time that he pleads, but he knows it could be up to 60, correct? Correct. He doesn't know, so he's got to somehow put an estimate around the sentence he's going to get. And he knows that if he goes to trial and gets convicted, it's a sure thing that he does life. Did he ever argue in terms of, the reason that I keep writing these notes to my lawyer, asking him to pursue the Xanax, is because I don't want to plead to something that is tantamount to a life sentence at 38 years old. He didn't explicitly state that, but their conversations about the adequate provocation defense are relevant to this, because that was a class B felony, just like the crime that he ultimately pled guilty to. He ultimately did not want to go, there was a lot of discussion in the It was only at the very, very last minute that he did it, or sorry, that he made the decision to plead guilty, and I want to sort of clarify, and maybe this is already obvious, but in the federal world, in federal criminal cases, there's very frequently a mandatory minimum sentence. I think the district court thought it was really important that there was no mandatory minimum sentence here. In Wisconsin law, there's almost no mandatory minimum sentences, but even the defense lawyer was arguing for a 25 to 30 year sentence, and the state has emphasized, in this case, the gruesomeness of the homicide, and they're emphasizing it for reasons relevant to their position, but also what that meant is, although there's no mandatory minimum in this case, theoretically, we can get anywhere from zero to 60 years, we're not looking at a low sentence here. From the start, it was clear the sentence for any plea to homicide was going to be incredibly high, and so that was absolutely a part of what was factored into between the plea and the trial, and under the case law, the court is required to do that weighing and consider the decision that the defendant was making on both sides of the equation. Despite I'm having a hard time getting past the, I guess, the obstacles that this defense would have faced at trial, his prior statements indicating that he knew right from wrong, the indications that he was selling the drugs, not taking them, the absence of any bottles or pills at home, etc. This looks like just pie in the sky. Well, first of all, the bottles and pills that came out for the first time at the habeas court based on some emails that a retired detective had had, so nobody's investigated this. The defense hasn't never looked into this, and so they never had an investigator try to determine what was going on with the medication. Certainly, Gish's statement to the police is problematic, as is often true in criminal cases, but he has made statements since then that are inconsistent with that, also often true in criminal cases, and he's prepared to testify at trial, and ultimately, that's just a question for the jury, and what he's asking for is the opportunity to give that question to the jury because he didn't get that opportunity. What he lost was not, you know, like we're not looking at the evidence that he's presented in light of other evidence that was presented at a trial so we can figure out how it all plays into a jury verdict. What he lost was the procedure of the trial itself, and so he's looking for the opportunity to prove, well, ultimately it would be the state who would be disproving the affirmative defense, but he's looking to take that case to trial. But he's not just looking to take it to trial. He wants to win or somehow end up with a lesser sentence. So is it really just he lost the procedure because, based on his own statements to his lawyer in advance, he's not looking to go to trial to have a trial. He wants to succeed or somehow end up with a lower sentence than he did. The letters aren't really, they don't go back and forth with a sentence he wants. It was more a defense. He committed this horrible, horrible offense, and he's trying to make sense of it with his attorney. He's trying to find a defense that especially takes into account the medications he took that he feels like is to blame for his actions. But a defense that will potentially succeed with a jury. Sure. It could potentially succeed or not. Not just a day in court, but something that would potentially succeed. But the situation here with a plea is really similar to what we have with the right to appeal. If an attorney does not advise his client of the right to appeal, we don't look at is he likely to succeed on appeal. Certainly not more likely than not to succeed on appeal. What we look at is if he'd been given the information by his attorney, is there a reasonable probability? That seems inconsistent with the language in Hill. And there's a trade-off. There's no benefit to not appealing, but there is a trade-off, and there is a benefit to pleading guilty. Sure. Well, there are often trade-offs in appeal. This is the kind of case where he's looking, in essence, for a second shot. Right. And he's asking for that shot, and he's taking that risk. Thank you, Ms. Pipe. For the respondent, warden. Good morning. May it please the court, Assistant Attorney General Kara Mealy on behalf of the District Court. I think it's primary position here today is that Mr. Gish has not overcome edpedeference, but I'd like to pick up just where we left off on the de novo review question of prejudice. I think it's very important to note that Mr. Gish is not challenging two of the District Court's factual findings in this case that actually makes this very easy to resolve on prejudice. The District Court explicitly found that the determinative issue in Mr. Gish's decision to plead or to go to trial was his prospects of success at trial. That makes this the type of case where this court does make a prediction as to the likely trial outcome in assessing whether Mr. Gish has proved prejudice. Lee v. United States says that, and so does Hill v. Lockhart. If you take a look at footnote three in Lee, the Supreme Court gives a very helpful discussion where we're basically talking about two different types of attorney errors when we're talking strickland prejudice in the plea context. There are those errors that have nothing to do with the outcome of the trial. Those are errors that affect the defendant's understanding of the consequences of their plea. Like Lee, it was deportation. Hill v. Lockhart, it was I didn't know my correct parole eligibility date. In those cases, courts aren't predicting the likely trial outcome because it's irrelevant. But the other type of attorney errors are those errors that are said to have affected how the trial would have played out in some way. And when that is the allegation, courts are making a prediction as to the likely trial outcome in assessing the effect of the attorney's error on the defendant's decision making. And that is what we have here. Mr. Gish is saying, hey, wait a minute. I had this viable affirmative defense that I didn't know about. And when that is the claim under Hill v. Lockhart, the resolution of the prejudice inquiry largely turns on whether that affirmative defense would have likely succeeded at trial. Mr. Lake, can you hold all the facts the same? I want you to just change one. Assume that Mr. Gish was 65 years old when he committed the murder. Don't change anything else. Okay? Is the prejudice inquiry the exact same as a legal matter in your view? We go right to Hill and we ask that question about whether the affirmative defense would have likely succeeded at trial? I think it largely depends on what the district court's factual finding was as to what the determinative issue in Mr. Gish's decision to plead or go to trial was. If it were a situation, and you know, Mr. Gish is trying to compare himself to this hypothetical defendant in Lee. It's an odd way for the law to work, isn't it? I'm not sure. I think when we're trying to figure out what was most important to a defendant in taking a plea or going to trial, it's going to be a factual determination. So if we make Mr. Gish 65 years old at the time of the murder and he says the reason that I would have thrown the Hail Mary or taken the one percent or less than one percent chance was either way I'm facing life. I'm going to plead into life or I'm going to get convicted into life. And I may as well make him prove it rather than just agree to go serve a life sentence through a guilty plea. And so my question is on that fact pattern, do we ask the Hill question or do we just say, no, no, no, this is closer to Lee? I think in that fact pattern, if Mr. Gish, if the district court determined under that fact pattern that Mr. Gish viewed the consequences of a plea and the consequences of a trial as similarly dire, then in that situation, yes, you're right. I don't think we would do the Hill v. Lockhart whether you were likely to succeed at trial because really that defendant was viewing the consequences of taking a plea. I think in Lee, they gave the example, if you take the plea, you get 17 years, you go to trial, you get 19 years, you might throw a Hail Mary in that situation. So it really just depends, I think it depends largely on what the district court's factual finding here was as to what was most important to Mr. Gish in taking the plea or going to trial. And how do we assess the likelihood of success at trial? Is it a jury would have to agree with it or there's some likelihood of success or? Well, under Lee v. Lockhart, or excuse me, Hill v. Lockhart, it's whether that affirmative defense likely would have succeeded at trial. I view that as not just whether Mr. Gish would have gotten an affirmative defense, gotten the instruction on it, it's whether a juror would have actually believed it. And I think to this point, I want to point out that Mr. Gish is also not challenging the district court's factual finding here that he had no credible evidence on the second element of this affirmative defense. He's asking this court not to consider that factual finding, but it's that what was most important to Mr. Gish is his prospects of success at trial. And in the words of the district court, with no credible evidence on the second element of the affirmative defense, his chances of success at trial were essentially nil. And that's because of the court's determination with respect to Dr. O'Donnell. Correct, that his testimony was incredible. I would also note that it is the state's position that Mr. Gish does not have credible evidence to show the first element of the affirmative defense, which would require him to prove that he actually even took Xanax according to prescription. I think you would agree that's maybe a closer call than the second one? It's a little bit closer call than the second one, but it is our position that he does not have. I mean, one of the things he has in his favor is, I mean, the condition he was found in immediately after the murder. Something's going on mentally. Absolutely. Absolutely. I don't know what precisely the cause was, but we didn't even know who he was. We're not disputing that he was found in a confused state. There was obviously some sort of mental health issue going on at that point, but the question is whether, for purposes of today, is whether he could prove at a trial that it was caused by Xanax and that he was incapable of distinguishing right from wrong at the time of the murder. Now, as I mentioned, the state's primary position here today is that this should have never had gotten to a federal evidentiary hearing. We do not believe that the Wisconsin Court of Appeals decision in this case constitutes an unreasonable application of strickland to the facts. It seems to me that the dispute between the parties here is about what the facts mean for purposes of this court's analysis. Mr. Gish's position seems to be that the facts are essentially what he alleged in his response to Appellate Counsel's no merit report, because he believes that those facts are presumed true for purposes of a no merit appeal. But I think that's really a distraction from the issue here today, because the Wisconsin Court of Appeals obviously did not presume that his factual allegations were true in concluding that there was nothing to investigate about Xanax. Ms. Mealy, the thing that troubles me on that issue is that it seems that the state court simply never allowed him an opportunity to develop a basis for this Sixth Amendment claim. Right, and you know it does seem, Your Honor, that his complaint is that they denied his ineffective assistance of counsel claim without an evidentiary hearing, but there is no federal constitutional right to an evidentiary hearing in state court on an ineffective assistance of counsel claim. So it seems to me really what the complaint is is that this is a Wisconsin law issue. Now the question is whether we've got a decision on the from the state courts when they haven't allowed factual development. Well, Your Honor, it is our position, and under Wisconsin law and this court's own precedent, that a decision on a no merit appeal is a decision on the merits. The difficulty I have with it is that the Wisconsin court said there's absolutely nothing to investigate, but yet the defendant is in a highly delusional state, you know, right after a murder, faces a murder one charge, and the Wisconsin Court of Appeals seems to have said, well, we agree there's nothing to investigate, relying entirely upon an argument that Gish's appellate counsel made in the Anders submission. I don't think there's nothing to investigate. I mean, he's in the ambulance thinking, saying things that make zero sense. I think that, you know, I'm not, we're not defending the state court's decision as a model of clarity here. I certainly wish it were clear what they mean by there was nothing to investigate. I think it could be interpreted... The point is that the district court seems like it was on really sound footing to then say, let's have a hearing and figure out what went on here and, you know, look at the claim. Well, but this was a decision on the merits in state court. The state court did not decide this case based on Mr. Gish's failure to allege a Strickland claim, and that is the analysis that the district court ran here, whether he stated a Strickland claim. That's not what the Wisconsin Court of Appeals did. They looked at the facts that were presented to it, and they made a decision on the merits. I don't see how a state court can decide an ineffective assistance of counsel claim like that without an opportunity for a hearing. Well, Your Honor, it routinely happens, whether it's through a merit appeal or whether it's through the no merit appeal. Wisconsin courts are routinely denying ineffective assistance of counsel claims on the merits without holding evidentiary hearings based on their conclusion that the record conclusively shows that the defendant is not entitled to relief. But are they doing that when maybe the record shows it, but there's additional evidence presented by the petitioner that suggests otherwise? Because here it seemed like the court just looked at what had been presented below in the trial court, and this issue of the intoxication had not been vetted there, but Gish submitted a lot of additional information in his response to the no merits petition that the court didn't seem to look at at all, which is different than what you're suggesting. It is our position, Your Honor, that the Court of Appeals, I know the language you're referring to, they said that this additional documentation is not properly before us, and both sides agree that that was incorrect. But the court then went on to say, in any event, we are not convinced that this issue has arguable merit. It is our position, based on our reading of the case, that they did consider that additional documentation. They noted specifically in a footnote that Mr. Gish told police that he did not take Xanax on the night of the murder. So, if we read the record differently, that the state court did not consider what Gish had submitted in his response because the state court thought those documents were outside of the record, is he entitled to a hearing? I would say no, because I don't think, you know, even if you were looking at this as just, did he sufficiently plead a Strickland claim, you still have to show how you would prove that claim. And I don't think he offered any support for his assertion that he was incapable of distinguishing right from wrong at the time of the murder. And this is at a stage at which he has pled guilty, he has, and his lawyer is saying there is no conceivable issue for appeal, so he's totally pro se about an issue that his lawyer didn't investigate. Well, that seems like a paradox to me. According to appellate counsel, Mr. Gish never raised this issue, and I think it's important to note he did have the benefit of an attorney looking through his case for him to see whether he had a basis to appeal. According to appellate counsel, Mr. Gish never brought this claim up to him, so he did have an opportunity for his lawyer to look into whether he could have gotten, found an expert to support what his assertion was, which is that he was incapable of distinguishing right from wrong at the time of the murder. Never brought it up to his appellate counsel or his trial counsel? Never brought it up to, appellate counsel said he's never brought this claim up to me. Because he certainly brought it up with the trial lawyer. I don't think for purposes of the ADPA analysis, we know that fact. We find it out later following the evidentiary hearing, but what was in front of the Wisconsin Court of Appeals was simply Mr. Gish's allegations with really no evidence of what actually happened. And it is the state's position in this case that in that situation, because the presumption under Strickland is that the attorney was competent, because the presumption is that an attorney's attention to certain issues to the exclusion of others reflects trial tactics, not sheer neglect, we think that the presumption is that inaction is not the result of oversight. So I think the Wisconsin Court of Appeals here, if they were correct in their assessment, applying that presumption of competence could look and determine whether or not that there would have been some sort of strategic reason for why counsel, had he known of Mr. Gish's claim that he took Xanax on the day of the murder, didn't go any further with it. There are no further questions. Thank you. Thank you, Ms. Mealy. Ms. Fite, a minute and a half. I think we used up all of your time, but go ahead. Thank you, Your Honor. The first thing I want to address, I pulled up the lines from Hill v. Lockhart that everybody's particularly concerned with, and there's a beginning part that wasn't talked about, and that's that generally the determination of whether to plead guilty is based on what would counsel have recommended. And so then it says, this assessment in turn will depend on a large part on prediction of what the evidence would have likely done. And then it goes down to Evans v. Myers, where the person says, no counsel in his right mind would have advised a client to plead guilty. Here, that's not what we have. We don't have an attorney who likely would have advised his client to plead guilty regardless. And in fact, the evidence presented at the hearing was that counsel would have told his client that this is something that he can do at trial, and he found it to be quite promising, and he's the person who has the experience in the Milwaukee County Courts. But did it go that far? Did counsel go that far at the hearing to suggest that he would have advised his client to go to trial with this defense? I think that is the inference of a lot of what he said, but he also specifically said that he doesn't advise his clients on whether to plead guilty or go to trial. And he also, I think, said that he has something like a dozen trials a year. And so I think we can take him at his word that he allows his clients to essentially make the decision themselves. But he presents them with the information about his impressions of the evidence. I know most certainly, though, would have brought up some of the points that Judge Hamilton did earlier, like realize what you're doing by going to trial. You go to trial, and you lose. You're facing life, mandatory. Sure. And at the same time... Correct. About selling the pills and all this other stuff. Right. As he's coming out of a delusional state from the hospital, and this is a plea deal that counsel has said he didn't think was particularly good. One other point I want to be sure to make is, I think somebody asked, is this a Hill case or a Lee case? And I think it's important that we don't try to fit this into one box or the other, because this ultimately is a Strickland claim. And under the analysis, we're looking at all the circumstances and all of the facts in the individual case to determine whether in this particular case, Mr. Gish likely would have gone to trial rather than pleading guilty. And unless your honors would like me to answer more questions about the Edpo part that the state was just talking about, I will ask that you reverse the district court's decision. Thank you very much. Thanks to both counsel. Case is taken under advisement.